# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT BOWLING GREEN

ANDREW J. SEAY                                                     **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 1:10CV-P59-R**

GREG PRINCE *et al.*                                         **DEFENDANTS**

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the complaint will be dismissed.

### I.

Plaintiff Andrew J. Seay is a convicted inmate currently incarcerated at the Simpson County Jail. He filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against the following Simpson County Jail officers in their official and individual capacities: Deputy Greg Prince, Deputy Scott Starks, Jailer Robert Huber, Deputy Randy Schenk, and Deputy Jailer/Captain Gerald Brashear.

Plaintiff first alleges that because of a tattoo on his back, he was placed "in a drunk tank on the floor with open wounds for 24 hrs without a mat." He contends that he has a "bad back."

Plaintiff next alleges that on January 19, 2010, he got into a fight in the day room[1] with someone with whom he had a conflict. He claims that he told Defendants Schenk and Starks "the time before I had a conflict with som[e]one across the hall and [Defendant] Starks told me either go back to the dorm I was in or go back to the hole. So I went back to the dorm." Plaintiff contends that the incident could have been avoided "had the right actions been taken by Jailer

---

[1]Plaintiff later states that on January 19th he and his "conflict" got into a fight in church.

and Deputys." He states, "I got put in the hole with a knot on my head I told them I felt dizzy they told me to lay down on concrete. They put me in the drunk tank once again instead of hole with no mat for 48 hrs."

As his third set of facts, Plaintiff alleges that on January 12, 2010, when he returned to the jail after being in court in Oldham County, Defendant Prince gave him his property and a mat. Plaintiff claims that the mat was "torn and wore down" even though "they" had been notified of his "bad back." Plaintiff was told to deal with the mat. He states, "I put my mat out the tray slot of the door and told them I'm not sleeping on that mat." Plaintiff called for Defendant Prince to let him know that he was not going to sleep on the mat. Defendant Prince asked Plaintiff if he had placed the mat in the slot, and Plaintiff answered in the affirmative. Defendant Prince asked Plaintiff to pack it up and then placed Plaintiff in the drunk tank without a mat. After 24 hours, Defendants Huber and Brashear were notified about why Plaintiff was placed in the drunk tank. They then ordered another 24 hours of time in the drunk tank.

As relief, Plaintiff seeks $350,000 in monetary damages and release on parole.[2]

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a

---

[2]"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In requesting release on parole, Plaintiff is seeking an immediate or speedier release from custody. The § 1983 claim for such relief, therefore, cannot lie.

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Official-capacity claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against all Defendants, therefore, are actually against Simpson

County.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  "Where a

government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a county policy or custom in causing his alleged harm. Rather, Plaintiff's allegations appear to be isolated events affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Nothing in the complaint demonstrates that Defendants' actions occurred as a result of a policy or custom implemented or endorsed by Simpson County. Accordingly, the complaint fails to establish a basis of liability against the municipality and, therefore, fails to state a cognizable § 1983 claim against Defendants in their official capacity.

### B. Individual-capacity claims

"[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (citations omitted). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03.

As to Plaintiff's failure-to-protect claim, he alleges that the fight between him and another inmate "could have been avoided had the right actions been taken," yet he fails to indicate what those "right actions" were. He does report, however, that he had previously told Defendants Schenk and Scott that he had a conflict with someone and that Defendant Scott offered him the option of going to the hole instead of staying in his dorm. Plaintiff concedes that he chose to go back to his dorm. Further, while Plaintiff alleges that he had a knot on his head and felt dizzy, he does not allege that he requested medical attention or that he suffered any injury or problems as a result of not having received medical attention.

As to Plaintiff's complaint that he was placed in the drunk tank, "'[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for

their offenses against society, it is insufficient to support an Eighth Amendment Claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation."). Plaintiff does not allege that he was denied basic human needs while in the drunk tank. He does indicate that despite a "bad back," he was not given a mat during a 24-hour stint in the drunk tank when he also had unspecified "open wounds" and was also not given a mat on two 48-hour stints in the tank. Plaintiff, however, does not complain of any injury, pain, or other problem resulting from his lying on the floor with "open wounds" and a "bad back." Plaintiff has not shown how these short-term denials of a mat, while likely unpleasant, rose to the level of an Eighth Amendment violation. *See*, *e.g.*, *Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) ("Grissom neither alleged nor presented any evidence that the seven-day mattress restriction deprived her of basic human needs or caused her to suffer serious harm."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) ("The defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a two week period.") (citing *Schroeder v. Kaplan*, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (requiring prisoner to sleep on floor for a four-week period without use of mattress does not violate the Eighth Amendment)). Similarly, Plaintiff's claim that he was given a "torn and wore down" mat upon return from court on January 12th does not constitute an Eighth Amendment violation.

For these reasons, Plaintiff has failed to state a viable Eighth Amendment claim against Defendants in their individual capacity.

As all claims fail to state a claim upon which upon which relief may be granted, the Court will enter a separate Order dismissing the instant action.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Simpson County Attorney
4413.005